IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19 CV 19

| | |
|---|---|
| LAWRENCE J. KAKENOWASH, ) | |
| ) | |
| Plaintiff, ) | MEMORANDUM AND |
| ) | RECOMMENDATION |
| v. ) | |
| ) | |
| ROBERT L. WILKIE, ) | |
| Secretary of Veteran Affairs, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court on Defendant's Motion to Dismiss (Doc. 8), which has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). Having carefully considered the parties' arguments, the record, and applicable authority, the undersigned respectfully recommends that the Motion be granted.

I. Relevant Procedural History

Plaintiff Lawrence J. Kakenowash ("Plaintiff") filed his Complaint on January 18, 2019. (Doc. 1).

Defendant Robert L. Wilke ("Defendant") filed a Motion to Dismiss and a supporting brief on June 3, 2019. (Docs. 8, 9).

By Orders entered on June 28, 2019 and July 22, 2019, the undersigned extended the deadline for Plaintiff to respond to the Motion to Dismiss.

On August 19, 2019, Plaintiff submitted a letter to the Honorable Martin Reidinger, United States District Judge, which letter the undersigned will construe as a response to the Motion. (Doc. 17).

Defendant replied on August 26, 2019. (Doc. 18).

The undersigned held a hearing on the Motion on November 25, 2019. Plaintiff appeared *pro se* and Assistant United States Attorney Caroline McLean appeared for Defendant. As Defendant provided supplemental case law at that time, the Court gave Plaintiff the opportunity to submit additional authorities within fourteen (14) days of the date of the hearing, though Plaintiff did not provide any additional authorities.

## II. Factual Background

A recitation of the factual allegations is somewhat difficult as Plaintiff's Complaint includes statements by him as well as other documents, some of which do not appear to be authored by Plaintiff. Nonetheless, drawing all reasonable inferences in Plaintiff's favor, the alleged factual basis for Plaintiff's claims, as gleaned from his Complaint and his argument at the hearing, is as follows:

Plaintiff is a Native American. Pl.'s Compl. (Doc. 1) at 2, 12. His surname, Kakenowash, means "Flying Golden Eagle" and holds sacred and religious value to him. Id. at 12, 3 (his surname "is how we honor God, this comes from the teaching of my Indian heritage and spiritual elders of the

2

Lakota (Sioux)").

Plaintiff worked as a housekeeper at the Charles George Veterans' Affairs Medical Center ("VA") in Asheville, North Carolina from October 21, 2012 to November 18, 2016. Id. at 2. The Complaint alleges that during this period, Plaintiff was the only Native American working in his department. Id. at 19. At the hearing, however, Plaintiff seemed to indicate there was at least one other Native American employed at the VA during his tenure.

John Mike Phillips, Ernestine Goodine, and Tab Dennis held supervisory positions at the VA and were Plaintiff's "Crew Leaders." Id. at 18.

Phillips, Goodine, Dennis, mispronounced and misspelled Plaintiff's name throughout his employment, calling him "Kinniwash," "Kanan-o-wash," and other such things. This conduct continued notwithstanding Plaintiff's repeated objections. Id. at 12, 17-18.

Plaintiff alleges that some of his fellow housekeepers also called him names such as "Chief" or "Twelve Feathers," but he "did not complain about that because there was no malice [sic] intent in their voices." Id. at 19.

Because other housekeepers did not experience similar problems, Plaintiff felt he was being "singled out," and "felt it must be because [he's] Indian." Id. at 15, 19.

Plaintiff alleges that his supervisors' failure to pronounce and spell his name correctly was deliberate and done "with discriminatory malice" and

3

"racist intent." Id. at 18.

At some point, Plaintiff complained to Terry Trull, the Chief of Environmental Services, and requested to be assigned to a different shift to avoid working with Phillips and Dennis. Trull, though, "did nothing." Id. at 18.

Plaintiff resigned on November 18, 2016. Id. at 2.

### III. Legal Standard

In a motion made pursuant to Rule 12(b)(6), the central issue is whether the complaint states a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In that context, the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 192. The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192.

Federal courts extend latitude to the pleadings of *pro se* litigants. See e.g., Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (noting that *pro se* pleadings are held "to less stringent standards than formal pleadings drafted by lawyers").

4

## IV. Discussion

This employment discrimination action is brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. § 2000e-2 *et seq.* The specific theories under which Plaintiff is attempting to proceed, though, are not clear. In that regard, Defendant reads Plaintiff's Complaint as alleging discrimination claims under theories of hostile work environment, constructive discharge, and disparate treatment, as well as a retaliation claim. See Def.'s Mem. (Doc. 9) at 6.

Even viewed in the light most favorable to Plaintiff, the undersigned is not convinced that Plaintiff has intended to assert all of these claims. Nonetheless, bearing in mind Plaintiff's *pro se* status, this memorandum will address them in turn.

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Similarly, an employer may not "limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2.

5

Title VII also prohibits an employer from retaliating against an employee who "has opposed any practice made an unlawful employment practice . . ., or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing . . .." 42 U.S.C.A. § 2000e-3.

## A. Discrimination Claim

### 1. Hostile Work Environment

To make out a hostile work environment claim under Title VII, a plaintiff must show that: (1) the conduct to which he was subjected was unwelcome; (2) the harassment was based upon his membership in a protected class; (3) the conduct was sufficiently severe or pervasive to create an abusive work environment; and (4) there is some basis for imposing liability on his employer. See Perkins v. Int'l Paper Co., 936 F.3d 196, 208 (4th Cir. 2019) (citing Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003)).

#### a. Unwelcome Conduct

The first element "is not a high hurdle" for a plaintiff to clear. Strothers v. City of Laurel, Maryland, 895 F.3d 317, 328 (4th Cir. 2018). An employee need only "voic[e] her objection to the alleged harasser or to the employer." Id. at 328-29. Here, Plaintiff has alleged that he repeatedly objected to his supervisors' continued mispronunciation of his surname and that he complained to the Chief of Environmental Services. Defendant acknowledges

6

that the alleged conduct is sufficiently unwelcome for purposes of this element and the undersigned concurs.

### b. Based on Membership in a Protected Class

In the second element, in order to establish that harassment is based on race or religion, a plaintiff must show that "but for his race or [religion], he would not have been the victim of the alleged discrimination." Causey v. Balog, 162 F.3d 795, 801 (4th Cir.1998). The behavior at issue is viewed "in light of the social context surrounding the actions." Strothers, 895 F.3d at 329 (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81-82 (1998)).

Plaintiff has alleged that his surname reflects his identity as a Native American and that it was repeatedly mispronounced and/or misspelled by his supervisors. "Scenarios in which a mispronounced name could be used to signal a racially derogatory connotation or otherwise foster an abusive or hostile environment are certainly possible. A shift in emphasis, especially if exaggerated, repeated, or used in a pejorative context, can significantly change meaning, enough to transform a . . . name into something akin to an unambiguously racial epithet." Arije v. Pointcross Life Scis., No. CV JKB-18-3119, 2019 WL 652426, at *6 (D. Md. Feb. 15, 2019) (internal citations omitted).

7

Plaintiff's allegations do not, however, support a conclusion that his name was mispronounced and misspelled because of his race or religion. While Plaintiff "felt" the conduct must have occurred "because [he's] Indian," Pl.'s Compl. (Doc. 1) at 19, that allegation is conclusory, and "conclusory statements, without specific evidentiary support, cannot support an actionable claim for harassment," see E.E.O.C. v. Xerxes Corp., 639 F.3d 658, 676 (4th Cir. 2011)(quoting Causey 162 F.3d at 802); see also Tlemcani v. Georgia Dep't of Cmty. Health, No. 1:17-CV-2547-TWT-JSA, 2018 WL 3581133, at *13 (N.D. Ga. June 15, 2018), report and recommendation adopted, No. 1:17-CV-2547-TWT, 2018 WL 3575074 (N.D. Ga. July 24, 2018), appeal dismissed, No. 18-13607-EE, 2019 WL 1011845 (11th Cir. Jan. 16, 2019) ("Merely mispronouncing a name is hardly direct evidence of any intention to make discriminatory employment decisions, much less on any particular basis.").

### c. Severe or Pervasive Conduct

In determining whether conduct is sufficiently severe or pervasive, courts consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Strothers, 895 F.3d at 331 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). To satisfy this element, a plaintiff must demonstrate both that he or she subjectively

8

perceived the harassment as being hostile, and that the harassment would be viewed similarly by a reasonable person. Harris, 510 U.S. at 21–22.

This element is not satisfied if an employee's claim is based on "simple teasing," Oncale, 523 U.S. at 82, "offhand comments" or "isolated incidents (unless extremely serious)," Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). At the same time, a pattern of relentless abuse is not required; this element can be met by "a single extremely serious act of harassment or by a series of less severe acts." Robinson v. Perales, 894 F.3d 818, 828 (7th Cir. 2018), reh'g denied (July 24, 2018) (citing Haugerud v. Amery Sch. Dist., 259 F.3d 678, 693 (7th Cir. 2001) (recognizing "that harassment need not be both severe and pervasive"). A plaintiff must "clear a high bar in order to satisfy the severe or pervasive test." E.E.O.C. v. Cent. Wholesalers, Inc., 573 F.3d 167, 176 (4th Cir. 2009) (quoting E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008)).

Here, it is clear that Plaintiff takes pride in his heritage and his surname, and that the repeated mispronunciation and/or misspelling of his surname was subjectively offensive and upsetting to him. Plaintiff's allegations, however, do not support a conclusion that his supervisors' conduct, though frequent, created an objectively hostile work environment to the point of changing the terms and conditions of Plaintiff's employment. See, e.g., Bass, 324 F.3d at 765; Faragher, 524 U.S. at 788 (Title VII not intended to be a

9

"general civility code.").

### d. Employer Liability

The potential liability of the VA for this conduct, as required by the fourth element, is satisfactorily alleged. Goodine, Phillips, and Dennis held supervisory positions. In addition, on at least one occasion, Plaintiff complained to Terry Trull, the Chief of Environmental Services, though Trull took no action.

### 2. Constructive Discharge

A constructive discharge claim requires a plaintiff to show that (1) the work environment was "so intolerable that a reasonable person in the employee's position would have felt compelled to resign" and (2) that he resigned. Green v. Brennan, 136 S. Ct. 1769, 1776-77 (2016) (citing Pennsylvania State Police v. Suders, 542 U.S. 129, 141, 148 (2004)).

While Plaintiff's allegations meet the second element, they do not satisfy the first. In a constructive discharge case, "the plaintiff must show 'something more' than the showing required for a hostile work environment claim." Evans v. Int'l Paper Co., 936 F.3d 183, 193 (4th Cir. 2019) citing Pennsylvania State Police v. Suders, 542 U.S. 129, 147, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004). Consequently, because Plaintiff's allegations are insufficient to state a hostile work environment claim, they likewise do not support a claim for constructive discharge.

### 3. Disparate Treatment

In a claim based on allegations of disparate treatment, a plaintiff must demonstrate: (1) his membership in a protected class; (2) his satisfactory work performance; (3) an adverse employment action; and (4) that he was treated differently from similarly situated employees outside the protected class. See Perkins, 936 F.3d at 207 (citing Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010)).

Defendant does not appear to dispute that Plaintiff has satisfied the first and second prongs of this analysis but argues that Plaintiff does not allege any adverse employment actions were taken against him or that similarly situated employees outside of the protected class received more favorable treatment, as required by the third and fourth prongs. Def.'s Mem. (Doc. 9) at 15-18.

"An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (quoting James v. Booz–Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004)). "[D]ischarge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion" are examples of adverse employment actions. Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999).

Here, there is no allegation of an adverse employment action. Plaintiff was not subject to demotion or a reduction in pay and his employment ended when he resigned, not through termination.

In addition, as noted above, the factual allegations of the Complaint do not support a conclusion that Plaintiff was treated differently than similarly situated employees on account of his race or religion. For example, there are no allegations that non-Native American housekeepers received more favorable treatment, such as preferred assignments, shifts, or higher compensation.

### B. Retaliation Claim

To allege a claim of retaliation, a plaintiff must demonstrate (1) that he engaged in a protected activity; (2) that the defendant acted adversely against him; and (3) the protected activity was causally connected to the adverse action. See Harris v. Home Sales Co., 499 F. App'x 285, 293 (4th Cir. 2012) (citing Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007)).

Defendant argues that Plaintiff's claim fails to satisfy these elements as Plaintiff does not allege that he engaged in any protected activity or that any adverse employment action was taken against him. Def.'s Mem. (Doc. 9) at 18.

The undersigned agrees. It is not apparent that the lodging of complaints by Plaintiff about the mispronunciation and misspelling of his name, in the absence of sufficient factual allegations that the conduct was based on his race

12

or religion, would qualify as a protected activity. Further, as noted, no adverse employment action was taken against Plaintiff because of his complaints or otherwise.

## V. Recommendation

Accordingly, for the reasons stated, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss (Doc. 8) be **GRANTED,** and that Plaintiff's claims be **DISMISSED**.

Signed: December 19, 2019

W. Carleton Metcalf
United States Magistrate Judge

13

Case 1:19-cv-00019-MR-WCM   Document 21   Filed 12/20/19   Page 13 of 14

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal.  See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).